Appeal Nos. 2020-1335, 2020-1337, 2020-1339, 2020-1340, 2020-1363

# United States Court of Appeals

## *for the*

# Federal Circuit

———————————

EVOLVED WIRELESS, LLC,

*Plaintiff-Appellant,*

v.

HTC CORPORATION, HTC AMERICA, INC., MOTOROLA MOBILITY LLC, ZTE (USA) INC., MICROSOFT CORPORATION, MICROSOFT MOBILE OY, NOKIA INC., SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC.,

*Defendants-Appellees.*

———————————

Appeals from the United States District Court for the District of Delaware in Nos. 1:15-cv-00543-JFB-SRF, 1:15-cv-00544-JFB-SRF, 1:15-cv-00545-JFB-SRF, 1:15-cv-00546-JFB-SRF, 1:15-cv-00547-JFB-SRF, Senior Judge Joseph F. Bataillon

## CORRECTED BRIEF FOR DEFENDANTS-APPELLEES

David M. Cooper
Thomas D. Pease
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Kevin P.B. Johnson
Victoria F. Maroulis
Todd M. Briggs
QUINN EMANUEL URQUHART & SULLIVAN
LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000

*Counsel for Defendants-Appellees Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

(Additional counsel listed on inside cover)

Stephen S. Korniczky
Martin R. Bader
Ericka J. Schulz
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
12275 El Camino Real, Ste 200
San Diego, CA 92130
(858) 720-8900

*Counsel for Defendants-Appellees HTC
Corporation and HTC America, Inc.*

Mitchell G. Stockwell
KILPATRICK TOWNSEND & STOCKTON
LLP
1100 Peachtree Street, NE
Suite 2500
Atlanta, GA 30309
(404) 815-6500

*Counsel for Defendant-Appellee
Motorola Mobility LLC*

Richard A. Cederoth
Nathaniel C. Love
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000

*Counsel for Defendants-Appellees
Microsoft Corporation, Microsoft Mobile
Oy, and Nokia Inc.*

Charles M. McMahon
Brian A. Jones
MCDERMOTT WILL & EMERY LLP
444 W. Lake Street, Suite 4000
Chicago, IL 60606
(312) 372-2000

Jay H. Reiziss
MCDERMOTT WILL & EMERY LLP
500 N. Capitol Street, NW
Washington, DC 20001
(202) 756-8000

*Counsel for Defendant-Appellee ZTE
(USA) Inc.*

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, counsel of record for Defendants-Appellees Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. certifies the following:

1.     The full name of every party represented by our firm is:

Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.

2.     The name of the real party in interest represented by our firm is:

Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by our firm are:

Samsung Electronics Co., Ltd.

4.     The names of all law firms and the partners or associates that appeared for the party now represented by our firm in the trial court or are expected to appear in this court are:

Quinn Emanuel Urquhart & Sullivan LLP:  John T. McKee

Previously with Quinn Emanuel Urquhart & Sullivan LLP:  Charles M. Stiernberg, Jr.

Shaw Keller LLP:  John W. Shaw, Karen E. Keller, Andrew E.  Russell, David M. Fry, and Nathan R. Hoeschen

Axinn, Veltrop & Harkrider LLP (previously with Zeineddin PLLC):  R. Paul Zeineddin

5.     The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

*Evolved Wireless, LLC v. Apple Inc.*, No. 19-2362 (Fed. Cir.) (companion case); *Evolved Wireless, LLC v. HTC Corp.*, No. 20-1335 (Fed. Cir.) (lead case); *Evolved Wireless, LLC v. Motorola Mobility, LLC*, No. 20-1337 (Fed.

Cir.) (member case); *Evolved Wireless, LLC v. ZTE (USA) Inc.*, No. 20-1339 (Fed. Cir.) (member case); *Evolved Wireless, LLC v. Microsoft Corp.*, No. 20-1340 (Fed. Cir.) (member case); *Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*, No. 20-1363 (Fed. Cir.) (member case)

6.   Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees):

None/Not Applicable

Dated: August 7, 2020                    /s/ *David M. Cooper*
                                         David M. Cooper
                                         QUINN EMANUEL URQUHART & SULLIVAN LLP

                                         *Counsel for Defendants-Appellees*
                                         *Samsung Electronics Co., Ltd. and*
                                         *Samsung Electronics America, Inc.*

iv

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, counsel of record for Defendant-Appellee ZTE (USA) Inc. certifies as follows:

1.    The full name of every party represented by our firm is:

ZTE (USA) Inc.

2.    The name of the real party in interest represented by our firm is:

ZTE (USA) Inc.

3.    The parent corporation or publicly held corporation that owns 10% or more of the stock of the parties in interest is:

ZTE Corporation

4.    The names of all law firms and the partners or associates that appeared for the party now represented by our firm in the trial court or agency or  are expected to appear in this court, and who have not or will not enter an appearance in this case, are:

McDermott Will & Emery LLP:  Charles M. McMahon, Jay H. Reiziss, Brian A. Jones, Thomas M. DaMario

Previously with McDermott Will & Emery LLP:  Natalie A. Bennett, Hersh H. Mehta

Richards, Layton & Finger, P.A.:  Kelly E. Farnan, Travis S. Hunter

Drinker Biddle and Reath LLP:  Thatcher A. Rahmeier, Keith A. Walter

5.    The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

*Evolved Wireless, LLC v. Apple Inc.*, No. 19-2362 (Fed. Cir.) (companion case) (appeal from No. 15-cv-542-JFB-SRF (D. Del.)); *Evolved Wireless, LLC v. HTC Corp.*, No. 20-1335 (Fed. Cir.) (lead case) (appeal from No. 15-

cv-543-JFB-SRF (D. Del.)); *Evolved Wireless, LLC v. Motorola Mobility, LLC*, No. 20-1337 (Fed. Cir.) (member case) (appeal from No. 15-cv-544-JFB-SRF (D. Del.)); *Evolved Wireless, LLC v. ZTE (USA) Inc.*, No. 20-1339 (Fed. Cir.) (member case) (appeal from No. 15-cv-546-JFB-SRF (D. Del.)); *Evolved Wireless, LLC v. Microsoft Corp.*, No. 20-1340 (Fed. Cir.) (member case) (appeal from No. 15-cv-547-JFB-SRF (D. Del.)); *Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*, No. 20-1363 (Fed. Cir.) (member case) (appeal from No. 15-cv-545-JFB-SRF (D. Del.)).

Dated:  August 7, 2020                    /s/ *Charles M. McMahon*
                                          Charles M. McMahon
                                          MCDERMOTT WILL & EMERY LLP

                                          *Counsel for Defendant-Appellee ZTE (USA) Inc.*

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, counsel of record for Defendant-Appellee Motorola Mobility LLC certifies as follows:

1.     The full name of every party represented by our firm is:

Motorola Mobility LLC

2.     The names of the real parties in interest represented by our firm are:

Motorola Mobility LLC

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties represented by our firm are:

Lenovo Group Ltd.

4.     The names of all law firms and the partners or associates that appeared for the parties represented by us in the trial court, or are expected to appear in the Court, and who have not or will not enter appearances in this case are:

Kilpatrick Townsend & Stockton LLP, Mitchell G. Stockwell, Taylor Higgins Ludlam, Richard W. Goldstucker

5.     The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.

*Evolved Wireless, LLC v. Apple Inc.*, No. 19-2362 (Fed. Cir.) (companion case) (appeal from No. 15-cv-542-JFB-SRF (D. Del.)); *Evolved Wireless, LLC v. HTC Corp.*, No. 20-1335 (Fed. Cir.) (lead case) (appeal from No. 15-cv-543-JFB-SRF (D. Del.)); *Evolved Wireless, LLC v. Motorola Mobility, LLC*, No. 20-1337 (Fed. Cir.) (member case) (appeal from No. 15-cv-544-JFB-SRF (D. Del.)); *Evolved Wireless, LLC v. ZTE (USA) Inc.*, No. 20-1339 (Fed. Cir.) (member case) (appeal from No. 15-cv-546-JFB-SRF (D. Del.)); *Evolved Wireless, LLC v. Microsoft Corp.*, No. 20-1340 (Fed. Cir.) (member case) (appeal from No. 15-cv-547-JFB-SRF (D. Del.)); *Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*, No. 20-1363 (Fed. Cir.) (member case) (appeal from No. 15-cv-545-JFB-SRF (D. Del.)).

Dated:  August 7, 2020

/s/ *Mitchell G. Stockwell*
Mitchell G. Stockwell
KILPATRICK TOWNSEND & STOCKTON LLP

*Counsel for Defendant-Appellee Motorola Mobility LLC*

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, counsel of record for Defendants-Appellees Microsoft Corporation, Microsoft Mobile Oy, and Nokia Inc. certifies the following:

1.  The full names of all parties represented by our firm are:

    Microsoft Corporation, Microsoft Mobile Oy, and Nokia Inc. (now Microsoft Mobile Inc.).

2.  The full names of all real parties in interest for the parties represented by our firm are:

    Microsoft Corporation.

3.  The full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the parties represented by our firm are:

    Microsoft Corporation.

4.  The law firms, partners, and associates that appeared for the parties represented by our firm in the originating court or agency or are expected to appear in this court for the parties represented by our firm are:

    Sidley Austin LLP:   Joseph A. Micallef, Scott M. Border, Wonjoo Suh (formerly, Sidley Austin LLP), Anna M. Weinberg (formerly, Sidley Austin LLP), Ellen S. Robbins (formerly, Sidley Austin LLP);

    Morris, Nichols, Arsht & Tunnell LLP:   Rodger D. Smith II.

5.  The case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal are:

    *Evolved Wireless, LLC v. Apple Inc.*, No. 19-2362 (Fed. Cir.) (companion case); *Evolved Wireless, LLC v. HTC Corp.*, No. 20-1335 (Fed. Cir.) (lead case); *Evolved Wireless, LLC v. Motorola Mobility, LLC*, No. 20-1337 (Fed. Cir.) (member case); *Evolved Wireless, LLC v. ZTE (USA) Inc.*, No. 20-1339 (Fed. Cir.) (member case); *Evolved Wireless, LLC v. Microsoft Corp.*, No.

20-1340 (Fed. Cir.) (member case); *Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*, No. 20-1363 (Fed. Cir.) (member case).

6.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees):

    None/Not Applicable


Dated:  August 7, 2020                   /s/ *Richard A. Cederoth*
                                         Richard A. Cederoth
                                         SIDLEY AUSTIN LLP

                                         *Counsel for Defendants-Appellees Microsoft Corporation, Microsoft Mobile Oy, and Nokia Inc.*

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, counsel of record for Defendants-Appellees HTC Corporation and HTC America, Inc. certifies the following:

1.    The full names of every entity represented by our firm in the case are:

HTC Corporation, HTC America, Inc.

2.    The full names of all real parties in interest for each entity represented by our firm in the case if that entity is not a real party in interest are:

None.

3.    The parent corporations for the entities represented by our firm in the case and any publicly held companies that own 10 percent or more of the stock of the entities are:

HTC Corporation owns more than 10% of HTC America, Inc.

4.    The names of all law firms and the partners or associates that appeared for the parties represented by us in the originating court, or are expected to appear in the Court for the entities, and who have not or will not enter appearances in this case are:

Potter Anderson & Corroon, LLP:  Philip A. Rovner, Jonathan A. Choa

Sheppard Mullin Richter & Hampton, LLP:   Nam H. Kim, Eric K. Gill, Tyler E. Baker, James V. Fazio

Formerly with Sheppard Mullin Richter & Hampton LLP:   Matthew M. Mueller, Kayla E. Page

5.    The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

*Evolved Wireless, LLC v. Apple Inc.*, No. 19-2362 (Fed. Cir.) (companion case) (appeal from No. 15-cv-542-JFB-SRF (D. Del.)); *Evolved Wireless, LLC v. HTC Corp.*, No. 20-1335 (Fed. Cir.) (lead case) (appeal from No. 15-

cv-543-JFB-SRF (D. Del.)); *Evolved Wireless, LLC v. Motorola Mobility, LLC*, No. 20-1337 (Fed. Cir.) (member case) (appeal from No. 15-cv-544-JFB-SRF (D. Del.)); *Evolved Wireless, LLC v. ZTE (USA) Inc.*, No. 20-1339 (Fed. Cir.) (member case) (appeal from No. 15-cv-546-JFB-SRF (D. Del.)); *Evolved Wireless, LLC v. Microsoft Corp.*, No. 20-1340 (Fed. Cir.) (member case) (appeal from No. 15-cv-547-JFB-SRF (D. Del.)); *Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*, No. 20-1363 (Fed. Cir.) (member case) (appeal from No. 15-cv-545-JFB-SRF (D. Del.)).

Dated:  August 7, 2020

/s/ *Stephen S. Korniczky*
Stephen S. Korniczky
SHEPPARD MULLIN RICHTER & HAMPTON LLP

*Counsel for Defendants-Appellees HTC Corporation and HTC America, Inc.*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ...........................................................III

STATEMENT OF RELATED CASES ............................................ XVII

PRELIMINARY STATEMENT .............................................................1

COUNTERSTATEMENT OF THE ISSUES .........................................2

COUNTERSTATEMENT OF THE CASE.............................................2

    A.    The '373 Patent .....................................................................3

    B.    The License Agreement ........................................................4

    C.    Motions For Summary Judgment...........................................6

    D.    District Court Decision .........................................................8

SUMMARY OF ARGUMENT ...........................................................11

STANDARD OF REVIEW .................................................................14

ARGUMENT ......................................................................................14

I.    THE DISTRICT COURT CORRECTLY HELD EVOLVED'S
    CLAIMS ARE BARRED BY LICENSE AND EXHAUSTION .................14

    A.    The '373 Patent Is Technically And Commercially Necessary
        To Make, Use, Or Sell Subsequent Generation Products ..................16

        1.    Devices with 4G capability, like the accused products,
            are "subsequent generation products" ......................................16

        2.    The '373 Patent is technically and commercially
            necessary to make, use, or sell devices with 4G
            compatibility. ..........................................................................22

    B.    The '373 Patent Is Technically And Commercially Necessary
        To Make, Use, Or Sell "Complete CDMA Telephones"...................22

1. Devices with 3G and 4G capability, like the accused products, are "Complete CDMA Telephones" ........................ 22

2. The '373 Patent is technically and commercially necessary to make, use, or sell products with 3G and 4G capability. ................................................................................... 26

II. THE DISTRICT COURT ACTED WELL WITHIN ITS DISCRETION BY REJECTING EVOLVED'S UNTIMELY AND INCOMPLETE ATTEMPT TO LIMIT THE SCOPE OF THE SUMMARY JUDGMENT RULING ........................................................... 28

CONCLUSION ................................................................................... 34

CERTIFICATE OF COMPLIANCE ....................................................... 38

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re Alameda Investments, LLC,*
    686 F. App'x 428 (9th Cir. 2017)..................................................................18

*Ali v. Fed. Bureau of Prisons,*
    552 U.S. 214 (2008) ..................................................................................20

*Avenues in Leather, Inc. v. United States,*
    178 F.3d 1241 (Fed. Cir. 1999) ................................................................20

*Bay County, Fla. v. United States,*
    796 F.3d 1369 (Fed. Cir. 2015) ................................................................20

*Boeing Co. v. Cascade Corp.,*
    207 F.3d 1177 (9th Cir. 2000) ..................................................................32

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    68 Cal. App. 4th 445 (1998)......................................................................18

*CSX Transp., Inc. v. Ala. Dep't of Revenue,*
    562 U.S. 277 (2011) .............................................................................19, 20

*Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC,*
    597 F.3d 1374 (Fed. Cir. 2010) ................................................................14

*Ethypharm S.A. France v. Abbott Labs.,*
    707 F.3d 223 (3d Cir. 2013) ......................................................................16

*Gilead Sciences, Inc. v. Lee,*
    778 F.3d 1341 (Fed. Cir. 2015) ................................................................20

*Greene v. Virgin Islands Water & Power Auth.,*
    557 F. App'x 189 (3d Cir. 2014).....................................................14, 30, 31

*Hirst v. Inverness Hotel Corp.,*
    544 F.3d 221 (3d Cir. 2008) ......................................................................14

*Hymas v. United States,*
    810 F.3d 1312 (Fed. Cir. 2016) ................................................................19

*Impression Prods., Inc. v. Lexmark Int'l, Inc.,*
    137 S. Ct. 1523 (2017) ................................................................................9

*Knoll v. City of Allentown*,
  707 F.3d 406 (3d Cir. 2013) ....................................................30, 31

*Mountain Air Enters., LLC v. Sundowner Towers, LLC*,
  398 P.3d 556 (Cal. 2017)...............................................................20

*Purdue Pharma L.P. v. Epic Pharma, LLC*,
  811 F.3d 1345 (Fed. Cir. 2016) ....................................................20

*Semitool, Inc. v. Dynamic Micro Sys.*,
  444 F.3d 1337 (Fed. Cir. 2006) .......................................................9

*Tesco Corp. v. Nat'l Oilwell Varco, L.P.*,
  804 F.3d 1367 (Fed. Cir. 2015)......................................................33

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
  563 F.3d 1271, 1276 (Fed. Cir. 2009) .......................................9, 10

*United States v. Miller*,
  624 F.2d 1198 (3d Cir. 1980) ...................................................14, 31

*United States v. Turkette*,
  452 U.S. 576 (1981) .......................................................................20

## Rules

D. Del. LR 16.4...................................................................................30

D. Del. LR 7.1.1................................................................................29

D. Del. LR 7.1.2(b) ...........................................................................28

Fed. R. Civ. P. 26(e) .........................................................................29

Fed. R. Civ. P. 37(c)(1)......................................................................29

Fed. R. Civ. P. 6(a) ...........................................................................28

## <u>STATEMENT OF RELATED CASES</u>

Defendants-Appellees identify the following appeal as related: *Evolved Wireless LLC v. Apple Inc.*, Case No. 2019-2362 (Fed. Cir.), *appeal voluntarily dismissed* (June 23, 2020).

## PRELIMINARY STATEMENT

The district court correctly rejected the infringement allegations of Evolved Wireless, LLC ("Evolved") for U.S. Patent No. 7,809,373 ("the '373 Patent") based on defenses of license and exhaustion. Evolved's infringement allegations rested upon its contention that the '373 Patent was essential to the 4G/LTE standard. There is no dispute that Evolved's claims are barred if the '373 Patent is covered by the license agreement ("License Agreement") between LG Electronics, Inc. (the original patent owner) and Qualcomm LLC (the supplier of the cellular chips in the accused products), and that coverage under the License Agreement rests on whether the '373 Patent is technically or commercially necessary to use, make, or sell "Subscriber Units" as those terms are used in the License Agreement.

The '373 Patent is technically and commercially necessary because the License Agreement's definition of "Subscriber Units" includes devices that implement 4G technology, and Evolved claims that the '373 Patent is essential for 4G-compatible devices. Evolved's argument in this appeal rests on a total disregard of the plain language of "subsequent generation products" and "multi-mode" products, both of which are included in the definition of "Subscriber Units." Simply put, the "subsequent generation" to 3G is 4G, and "multi-mode" undisputedly means more than one network standard. Evolved identifies no

plausible definition of these terms that would exclude devices, like the accused products, with both 3G and 4G technology.

Furthermore, the district court acted well within its discretion to reject Evolved's unsupported and improper attempt to limit the scope of the summary judgment ruling.  On the record properly before it, the district court correctly refused to accept Evolved's assertion that the License Agreement supposedly had been terminated.

## COUNTERSTATEMENT OF THE ISSUES

1.     Whether the district court correctly held that claims for infringement of accused products that implement 3G and 4G technology are barred by license and exhaustion where the License Agreement expressly covers 3G technology, subsequent generation products, and multi-mode devices.

2.     Whether the district court acted within its discretion in declining Evolved's belated attempt to limit the scope of the summary judgment ruling by filing an unauthorized "Notice of Supplemental Facts," months after briefing ended and years after discovery closed, and providing no factual or legal basis to establish any limit on license or exhaustion.

## COUNTERSTATEMENT OF THE CASE

This appeal arises from the district court's order granting Defendants' motion for summary judgment on the defenses of license and exhaustion, and

dismissing Evolved's claims for infringement of the '373 Patent against accused products incorporating Qualcomm chips.

### A. The '373 Patent

Evolved brought claims against Defendants for alleged infringement of the '373 Patent. The '373 Patent issued on October 5, 2010, and it purportedly relates to the handover of a mobile device from one cell tower base station to another cell tower base station in a cellular network. Appx38.

The application for the '373 Patent was filed on October 27, 2006, and the inventors of the '373 Patent assigned the entire right, title, and interest in the '373 Patent to LGE on November 2, 2006. Appx18. TQ Lambda, LLC, the predecessor to Evolved, purchased the '373 Patent (as part of a portfolio of patents) from LGE in January 2014. *Id.*

LGE declared the '373 Patent essential to the 4G/LTE standard. *Id.* Evolved also alleges that the patents-in-suit are essential to the 3GPP 36 Series Technical Specifications, which cover the 4G/LTE standard. *Id.*

Evolved accuses Defendants of infringing the '373 Patent in connection with many of Defendants' products (including cellular telephones, tablet computers, and other devices) that are compatible with 4G/LTE networks because of that compatibility. *See, e.g.*, Appx304-306, Appx788-790, Appx1032-1034,

3

Appx1369-1371, Appx1694-1696.  All of the accused products are capable of communication on both 4G/LTE and 3G/CDMA wireless networks.  Appx2174.

### B.    The License Agreement

On August 31, 1993, Qualcomm entered into a license agreement with Goldstar Information & Communications Ltd., the corporate predecessor of LGE.  Appx19, Appx2210.  This agreement was amended several times, and the most recent amended version from 2010 (the "License Agreement") governs in this case.  Appx19.

Under the License Agreement, LGE granted Qualcomm certain covenants with respect to its intellectual property.  In particular, LGE covenanted "not to Assert any of LICENSEE's Intellectual Property against (i) QUALCOMM or its Affiliates for making, having made, using, importing, leasing, selling, or otherwise disposing of Components (including but not limited to associated software)."  Appx2340.  LGE also covenanted "not to Assert any of LICENSEE's Limited Intellectual Property against (i) a QUALCOMM Customer or its Affiliates . . . for making, having made, using, importing, selling, leasing or otherwise disposing of Covenant Products where the alleged basis for infringement arises from the use or incorporation of QUALCOMM Components (including but not limited to associated software) in such Covenant Products . . . ."  *Id*.  "'LICENSEE's Limited

Intellectual Property' means LICENSEE's Intellectual Property" with exceptions inapplicable here.  Appx2319-2320.

"LICENSEE's Intellectual Property" is defined to include "LICENSEE'S Commercially Necessary IPR" and "LICENSEE's Technically Necessary IPR." Appx2213.  "Technically Necessary IPR" is defined as (*inter alia*) "LICENSEE's (and its Affiliate's) patents . . . which are technically necessary to use, make and/or sell Subscriber Units . . . ."  Appx2214.  Similarly, "Commercially Necessary IPR" is defined as (*inter alia*) "LICENSEE's (and its Affiliate's) patents . . . which are commercially necessary to use, make and/or sell Subscriber Units . . . ." Appx2213.  Moreover, "'Covenant Products' means an entity's Subscriber Units." Appx2343.   And  "'Components'"  refers  to  things  "intended  for  use  in (i) Subscriber Units."  Appx2328.

Thus, as relevant here, the License Agreement covers any LGE patent that is technically necessary or commercially necessary to make, use, or sell "Subscriber Units."  The License Agreement defines "Subscriber Unit" as "a Complete CDMA Telephone or a CDMA Modem Card, and any subsequent generation products." Appx2313.  The phrase "any subsequent generation products" was added in 2004 amendments to the License Agreement.  *Id*.

The License Agreement defines "Complete CDMA Telephone" as "any complete CDMA (including multi-mode) terminal, including but not limited to a

fixed, mobile, transportable or portable telephone or data terminal, which (i) incorporates all or any part of the QUALCOMM Intellectual Property and (ii) can be used, without any additional equipment or components being attached thereto, to initiate and/or receive Wireless communications." Appx2440. The language "including multimode" was added in 2010 amendments to the License Agreement. "Wireless" is defined to "include[], without limitation, (i) any CDMA-based wireless wide area standard . . . ; and (ii) any updates or revisions to any of the foregoing." Appx2443. The "without limitation" and "any updates or revisions" phrases were added in 2010 amendments to the License Agreement. *Id.* The License Agreement's definition had previously defined "Wireless" to cover "only CDMA-based" systems. Appx2217.

### C.    Motions For Summary Judgment

Fact discovery closed on April 10, 2017. *See* Appx211. On August 31, 2017, Defendants moved for summary judgment based on their defenses of license and exhaustion. Appx2159-2197. On the same date, Evolved cross-moved for summary judgment on those defenses. Appx2198-2200. The parties filed oppositions and replies, with briefing concluded on May 4, 2018. *See* Appx230.

More than nine months later, on February 21, 2019, Evolved, without leave of court, filed a "Notice of Supplemental Facts in support of its Combined Opening-Answering Brief Regarding Defendants' Affirmative Defenses Alleging

License, Covenant Not to Sue, and Exhaustion" ("Notice"). Appx4593-4597. Evolved's unsanctioned Notice asserted that LG had terminated the Agreement, effective December 31, 2018, by way of a letter sent in May 2018 from LG to Qualcomm. The Notice included a declaration of Younghan Song ("Song Declaration"), purportedly an LG employee, attesting to the alleged termination of the Agreement. Appx4604-4608. Evolved's Notice then asserted a new argument that the Agreement "is no longer in effect and cannot serve as the basis for relieving liability for any infringement that occurs on or after January 1, 2019." Appx4595-4596. Although the License Agreement had previously been renewed and amended several times, Evolved could not say if the Agreement had been replaced through the ongoing negotiations taking place at the time of Mr. Song's declaration. Appx4726-4727. Evolved did not explain why it waited to file the Notice over eight months after LG sent the purported termination letter.

Also on February 21, 2019, the district court denied summary judgment without prejudice on the ground that "[t]he record contains only heavily redacted copies of the Licensing Agreement and amendments." Appx4639. Evolved sought clarification and partial reconsideration on March 1, 2019, on the basis that the supposed lack of competent evidence to support the defenses of license and exhaustion meant that Evolved was entitled to summary judgment. Appx4647. On March 21, 2019, the district court denied that motion without prejudice. Appx4687.

Notably, Evolved never sought reconsideration based on the alleged termination of the License Agreement.

On August 30, 2019, the district court issued an order stating that it "may reconsider its earlier decision to defer determination of the licensing/patent exhaustion issue until after the pending trials" and scheduled oral argument. Appx4702-4703.  At the hearing, on September 13, 2019, Evolved's counsel stated that the copies of the License Agreement that Evolved had received from LGE in connection with the purchase of the '373 patent were consistent with, and provided no further relevant information beyond what is included in, the redacted copies that had been provided to the court.  Appx4748-4749.  The district court also questioned Evolved regarding the supposed termination of the License Agreement, asking whether the purportedly terminated version of the agreement had been replaced and noting "[t]hey had to have been replaced."  Appx4726.  Evolved's counsel responded by stating only that "what that declaration said is that there were ongoing negotiations of whether to replace those agreements with something, but those were terminated," and that "there's no evidence they were replaced." *Id.*

### D.    District Court Decision

On December 3, 2019, the district court issued an order granting Defendants' motion for summary judgment.  The court began by noting that "[t]he

parties have now assured the Court that redacted portions of the Agreements would not affect the determination of this issue." Appx11.[1]

The court then explained that under the doctrine of patent exhaustion, "[w]hen a patentee chooses to sell an item, that product 'is no longer within the limits of the monopoly' and instead becomes the 'private, individual property' of the purchaser, with the rights and benefits that come along with ownership." Appx29 (quoting *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523, 1531 (2017)). The court also explained that "[a] covenant not to sue for patent infringement is equivalent to a patent license." Appx30 (citing *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275, 1276 (Fed. Cir. 2009)).

The court further set forth the principles for interpreting the License Agreement. "'Under California law, the interpretation of a contract is a question of law' that 'is governed by the objective intent of the parties as embodied in the words of the contract." Appx30 (quoting *Semitool, Inc. v. Dynamic Micro Sys.*, 444 F.3d 1337, 1341 (Fed. Cir. 2006)). "The district court may receive and consider extrinsic evidence to determine whether one or more terms of a contract is

---

[1] Evolved states (Br. 25 n.10) that it did not make such a concession in the district court, but Evolved cites nothing in the district court where it identified how the redactions might affect the license or exhaustion issue. In any event, Evolved does not argue on appeal that the redactions are relevant to license or exhaustion, or that the district court erred in deciding the issue on summary judgment given the redactions. Accordingly, the issue is waived for purposes of appeal.

reasonably susceptible to multiple meanings, but once the district court determines that no ambiguity exists, extrinsic evidence is properly not admitted." Appx30-31 (citing *TransCore*, 563 F.3d at 1277 n.2).

Based on its interpretation of the License Agreement, the court held Evolved's claims barred by patent exhaustion and license because the agreement authorizes Defendants' sales of the alleged infringing products containing Qualcomm chipsets. Appx31. The court held that "[i]t is clear . . . that Evolved bought the '373 Patent subject to the Qualcomm-LGE SULA Agreement, first executed in 1993 and amended several times thereafter." Appx32. In particular, "Evolved inherited LGE's covenants through purchase of the '373 patent." *Id.*

The court rejected as "unreasonably narrow" and "unsupported" Evolved's interpretation that the License Agreement is limited only to "those patents related to CDMA technology." *Id.* As the court explained, "[u]nder the plain language of the [License Agreement], especially the 2010 revision of the term 'subscriber units' to cover multi-mode devices, the parties contemplated covering the universe of evolving technology that incorporated Qualcomm chipsets." *Id.* In addition, "[t]he record shows the asserted patent is both technically and commercially necessary IPR to use, make, or sell 'subscriber units'" because "LGE declared the '373 Patent to be a standard essential patent" and because "the '373 Patent is also commercially necessary." Appx33. The district court further explained that

"[a] review of the [License Agreement] shows" that it was "meant to grow and evolve with the technology," as it covers "'subsequent generation products,' 'updates or revisions,' 'any improvements to any of such [technically or] Commercially Necessary IPR which is developed or acquired during the Improvement Period' and 'future evolutions of such standards.'" Appx33-34.

For these reasons, the district court dismissed Evolved's claims for infringement of the '373 Patent. [2]  Evolved did not seek reconsideration or modification of the order granting summary judgment.

## SUMMARY OF ARGUMENT

**I.**  The district court correctly held that Evolved's claims are barred by the doctrines of license and exhaustion because the '373 Patent falls within the plain language of the License Agreement.  The License Agreement is not strictly limited to 3G-*only* patents or products, as Evolved argues, but more broadly encompasses the next generation of multi-mode cellular devices that also include 4G compatibility.  The License Agreement covers devices (like the accused products) that implement 3G *and* 4G technology within the definition of Subscriber Units on two independent grounds.

---

[2]  The Order excepted products from certain Defendants that did not contain Qualcomm-based chipsets, which were not included within the motion for summary judgment.  Appx36.  Subsequently, all claims regarding products without Qualcomm-based chipsets were dismissed by stipulation of the relevant parties and appropriate final judgments entered.  Appx4812-4815.

*First*, "Subscriber Units" expressly include "subsequent generation products," which necessarily describe products with 4G technology. There is no plausible basis for Evolved to avoid the well-established meaning of "generation" in the evolution of cellular technology. Each "generation" marks a new standard, from 1G to 2G to 3G to 4G (and now to 5G). Indeed, the "G" stands for generation, and that is how Evolved itself uses the term "generation" in its Complaint and its own brief before this Court. Because Evolved itself claims that the '373 Patent is necessary to products with 4G technology, for purposes of the license, the patent is considered necessary to "subsequent generation products." According to the plain terms of the License Agreement, the '373 Patent is therefore licensed intellectual property.

*Second*, "Subscriber Units" also expressly include "multi-mode" devices, which Evolved recognizes as devices that support more than one wireless standard, not just 3G technology. There is no dispute that cell phones with 3G and 4G compatibility are "multi-mode" devices, and there is nothing in the definition of "Subscriber Units" that even remotely suggests the exclusion of such devices. Evolved also relies on the fact that the "multi-mode" devices must be capable of "Wireless" communications, which Evolved asserts is limited to 3G communications. However, there is no such limitation because "Wireless" includes 3G/CDMA and "any updates or revisions" "without limitation."

Moreover, even if "Wireless" were somehow limited to 3G, that would be irrelevant here because the accused devices are all undisputedly capable of 3G communications, which is all that the License Agreement requires. Finally, Evolved's assertion that 4G compatibility is itself unnecessary fails to confront the district court's clear and well-supported holding that 4G was *commercially* necessary, even if it was also technically possible to have a multi-mode device limited to 2G and 3G communications.

**II.** The district court acted well within its discretion by refusing to accept Evolved's assertion that an alleged termination of the License Agreement limited the scope of the license or exhaustion defenses. Evolved did not timely or properly raise this issue under the Delaware Local Rules or the applicable scheduling order, which required court approval for any additional filing after the close of summary judgment briefing. Evolved's filing of a "Notice of Supplemental Facts" nine months after briefing ended and years after discovery closed, without seeking leave of the court, clearly violated the Local Rules. The Third Circuit has held that such a violation justifies the district court's refusal to consider a late-filed affidavit on summary judgment. On the record properly before it, the district court correctly refused to accept Evolved's invitation to presume that the License Agreement is no longer in force.

13

## STANDARD OF REVIEW

As Evolved notes (Br. 32), a grant of summary judgment is reviewed *de novo*. Evolved does not argue that there is any dispute of material fact and specifically notes (Br. 49) that both parties believe the License Agreement to be unambiguous. Accordingly, for Part I, *infra*, this case simply requires application of the plain language of the License Agreement.

For Part II, *infra*, this Court reviews a district court's decision to exclude evidence under the law of the regional circuit. *Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1379 (Fed. Cir. 2010). The Third Circuit reviews a district court's evidentiary decisions, including decisions to exclude evidence on summary judgment, for abuse of discretion. *See Greene v. Virgin Islands Water & Power Auth.*, 557 F. App'x 189, 200 (3d Cir. 2014); *Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 225 (3d Cir. 2008). Where the exercise of discretion is premised on application of local rules, the district court is entitled to substantial deference. *See United States v. Miller*, 624 F.2d 1198, 1200 (3d Cir. 1980).

## ARGUMENT

## I.    THE DISTRICT COURT CORRECTLY HELD EVOLVED'S CLAIMS ARE BARRED BY LICENSE AND EXHAUSTION

Putting aside Evolved's belated argument regarding the temporal scope of the summary judgment ruling, discussed *infra* Part II, the only question at issue

here is whether the '373 Patent is technically or commercially necessary to make, use, or sell Subscriber Units within the meaning of the License Agreement.

Evolved does not dispute the district court's holdings (Appx31-32) that Evolved is bound by LGE's covenants (because it purchased the '373 Patent from LGE subject to those covenants), and that those covenants suffice for defenses of license and exhaustion for any products included within the scope of the License Agreement.  On the question of whether the License Agreement covers the '373 Patent, Evolved recognizes (Br. 13, 16) (and as discussed *supra* at 4-5) the License Agreement applies to "LICENSEE's Intellectual Property" and "LICENSEE's Limited Intellectual Property," which in turn include "LICENSEE's Commercially Necessary IPR" and "LICENSEE's Technically Necessary IPR."  Nor does Evolved dispute that those terms apply (respectively) to patents "which are technically necessary to use, make and/or sell Subscriber Units" and patents "which are commercially necessary to use, make and/or sell Subscriber Units." Appx2213-2214.   "Subscriber Units" are defined as "Complete CDMA Telephones . . . and any subsequent generation products."  Appx2313.

Thus, as relevant here (and as Evolved recognizes, Br. 18, 35), the License Agreement covers a patent that is technically or commercially necessary to make, use, or sell either (a) subsequent generation products, or (b) Complete CDMA

Telephones.[3]   As discussed below, the '373 Patent satisfies both of these independent bases for license and exhaustion.

**A.    The '373 Patent Is Technically And Commercially Necessary To Make, Use, Or Sell Subsequent Generation Products**

**1.    Devices with 4G capability, like the accused products, are "subsequent generation products"**

The term "[s]ubsequent generation products" necessarily means that "Subscriber Units" are not limited to 3G technology, but encompass future generations, such as 4G technology.  In the realm of cellular technology, the term "generations" is well understood to mean the leaps from 1G to 2G to 3G to 4G (and now 5G) mobile networks.  *See, e.g.*, Appx12-13.  Indeed, the "G" stands for generation.  The context of the License Agreement confirms that this was the intended use of "generation" because in the definition of "Subscriber Units," "subsequent generation products" comes immediately following "Complete

---

[3]   Evolved criticizes (Br. 46-49) the district court for mentioning extrinsic evidence, but this is a red herring.  The district court mentioned certain facts—regarding Qualcomm's licensing and marketing practices—simply for "background."  Appx12.  Regardless, the district court held (Appx10-11) the License Agreement was unambiguous on its face, a point Evolved does not contest, and the district court interpreted (Appx31-35) the License Agreement based on its plain language without resort to extrinsic evidence.  Thus, the question for this Court is simply whether the terms of the License Agreement cover the '373 Patent. In any event, there is nothing unusual or problematic about the district court providing facts for background and then proceeding to decide the issue based on the terms of the License Agreement  *See, e.g.*, *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 225 n.1 (3d Cir. 2013) ("To the extent we recount facts outside of the complaint, we do so for informational purposes only and do not rest our decision on those facts.").

CDMA Telephone or a CDMA Modem Card," *i.e.*, 3G products.  Appx2313.  By definition, the "subsequent" (*i.e.*, next) generation to 3G technology is 4G technology.

If there were any doubt, that is how Evolved has used the term "generation" throughout this case.  In the Complaint, Evolved stated that "[a]round 1980, first generation ('1G') mobile phones were introduced," then "second generation ('2G') phones emerged," then "third generation ('3G') phones emerged," and then "LTE" (*i.e.*, 4G) was developed.  Appx287-288.  Likewise, the Statement of Facts section of Evolved's brief on appeal (Br. 7-8) refers to "generation" to mean each leap from 1G to 2G to 3G to 4G.  Thus, the well-established and shared meaning of the "subsequent generation" to 3G/CDMA technology is 4G technology.

Evolved provides no basis for its assertion (Br. 40) that "'subsequent generation products' refers to subsequent generation products that implement CDMA network technology."  To begin with, it is unclear whether Evolved means that "subsequent generation products" might implement 3G/CDMA technology in addition to 4G/LTE technology.  If so, that does not help Evolved.  Evolved's entire infringement claim is premised on its argument that the '373 Patent is necessary (both technically and commercially) to any device that implements 4G technology, which necessarily includes devices like the accused products that implement both 3G and 4G technology.  Alternatively, if Evolved means to

17

interpret "subsequent generation products" as limited to products that *only* implement 3G technology, the argument makes no sense. Limiting "Subscriber Units" to 3G would mean *same*-generation products, not subsequent-generation products. Moreover, Evolved provides no definition of "subsequent generation" other than the difference between 3G and 4G, and no explanation for what would make a 3G product a "subsequent generation product." Nor does Evolved provide a single example of anyone referring to "generation" in the context of cellular technology to mean something other than such a 3G to 4G leap.

Evolved's theory would improperly render the term "subsequent generation products" meaningless. Under California law, which governs the License Agreement, *see* Appx2237, contracts should not be interpreted to render a term superfluous. *See, e.g.*, *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 68 Cal. App. 4th 445, 473 (1998) ("Courts must interpret contractual language in a manner which gives force and effect to *every* provision, and not in a way which renders some clauses nugatory, inoperative or meaningless."); *see also In re Alameda Investments, LLC*, 686 F. App'x 428, 430 (9th Cir. 2017) (similar). That is especially true here because the parties specifically added the phrase "subsequent generation products" as part of an amendment to the License Agreement—and presumably did not do so for no reason at all. However, if (as Evolved contends) "subsequent generation products" means only 3G products,

then those products were already Subscriber Units even before the amendment. The prior definition of "Subscriber Units" had separately included "complete CDMA . . . telephone[s]." Appx2216. Thus, under Evolved's theory, LGE and Qualcomm's addition of "subsequent generation products" did nothing to expand the scope of "Subscriber Units." That makes no sense. There is no basis to treat "subsequent generation products" as surplusage, in conflict with both its plain language and the governing law.

In the absence of any support for its theory that "subsequent generation" means something other than 4G, Evolved erroneously rests (Br. 41) on *ejusdem generis*. "[T]he canon of *ejusdem generis* [] 'limits general terms [that] follow specific ones to matters similar to those specified.'" *CSX Transp., Inc. v. Ala. Dep't of Revenue*, 562 U.S. 277, 294 (2011). This canon is completely inapposite here. *First*, it applies only when the provision is ambiguous. *See Hymas v. United States*, 810 F.3d 1312, 1321-22 (Fed. Cir. 2016) ("[T]he Claims Court relied upon the principle of *ejusdem generis* . . . , but that canon comes into play only when there is some uncertainty as to the meaning of a particular clause . . . .") (quotation marks omitted). For the reasons discussed above, there is no such ambiguity here. *Second*, the premise of *ejusdem generis* is absent here:  there is no specific list followed by a general catch-all phrase. The classic example of *ejusdem generis* is a provision such as "fishing rods, nets, hooks, bobbers, sinkers, and other

19

equipment," where "other equipment" is intended as a catchall for fishing equipment similar to the items expressly listed. *See CSX Transp.*, 562 U.S. at 294 (quotation marks omitted). Absent such a list followed by a general catchall phrase, courts routinely reject application of *ejusdem generis*.[4] Here, there is no list, just two categories, "Complete CDMA Telephone or a CDMA Modem Card." Appx2313. More importantly, in sharp contrast to the cases Evolved cites,[5] there is no general catchall phrase. Instead, "subsequent generation products" is a very particular phrase that plainly refers to devices different than those described

---

[4] *See, e.g.*, *CSX Transp.*, 562 U.S. at 294 ("*ejusdem generis* is not relevant here" because there is no "general or collective term following a list of specific items") (quotation marks omitted); *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 225 (2008) ("The absence of a list of specific items undercuts the inference embodied in *ejusdem generis* that Congress remained focused on the common attribute when it used the catchall phrase."); *United States v. Turkette*, 452 U.S. 576, 582 (1981) ("The latter is not a more general description of the former," and thus "*ejusdem generis* has no bearing"); *Purdue Pharma L.P. v. Epic Pharma, LLC*, 811 F.3d 1345, 1356 (Fed. Cir. 2016) (rejecting *ejusdem generis* where the residual clause was intended to apply to a broader group than those otherwise listed); *Bay County, Fla. v. United States*, 796 F.3d 1369, 1376-77 (Fed. Cir. 2015) ("[T]his definition does not lend itself to application of *ejusdem generis* because the 'an agency with less than state-wide jurisdiction' phrase is not a general term following a list of specific items."); *Gilead Sciences, Inc. v. Lee*, 778 F.3d 1341, 1347-48 (Fed. Cir. 2015) ("*ejusdem generis* is inapplicable" because "the third subsection of the statute does not provide a general word or phrase, but rather employs broad language").

[5] *See Mountain Air Enters., LLC v. Sundowner Towers, LLC*, 398 P.3d 556, 563 (Cal. 2017) (applying *ejusdem generis* to general term "any other proceeding"); *Avenues in Leather, Inc. v. United States*, 178 F.3d 1241, 1244 (Fed. Cir. 1999) (applying *ejusdem generis* to general terms "similar containers" and "similar articles").

before—and distinguishes those devices by generation. The License Agreement's use of "subsequent generation" in juxtaposition to CDMA devices *reinforces* that the subsequent generation is not just another CDMA device. Accordingly, the canon of *ejusdem generis* cannot be used to undercut the plain meaning of "subsequent generation products."

Finally, Evolved's reliance (Br. 42) on the negotiation history is meritless. Evolved cites nothing at all for its assertion (*id.*) that LGE and Qualcomm intended "subsequent generation products" to include only 3G by adding it along with and in addition to CDMA Modem Cards. Indeed, the evidence shows that "Qualcomm's intent was to include future generations of cellular technology, including LTE, within the scope of 'LICENSEE'S Intellectual Property,' as those technologies became commercially necessary." Appx3870 (footnote omitted). That is consistent with the fact that Qualcomm and LGE repeatedly extended the "Improvement Period" that defined the time period for the intellectual property included within the scope of the License Agreement. Appx25. In short, there is no plausible basis for Evolved's view that LGE and Qualcomm, well-acquainted with the normal definitions applied to cellular technology, sought to *exclude* 4G-compatible products while *adding* the term "subsequent generation products."

### 2. The '373 Patent is technically and commercially necessary to make, use, or sell devices with 4G compatibility

Evolved does not dispute that the '373 Patent is technically and commercially necessary to make a phone with both 3G and 4G compatibility, including the accused products. While Evolved argues at length (Br. 35-40) that the '373 Patent is not technically and commercially necessary to 3G alone, this argument simply reflects its disagreement over what devices constitute the "Subscriber Units" to which a patent must be necessary. Evolved's entire infringement claim is premised on the idea that the '373 Patent is supposedly a standard essential patent for 4G capability, and Evolved concedes (Br. 2) the point on appeal. Thus, because "Subscriber Units" include devices that use 4G technology and Evolved's entire case is premised on its claim that the '373 Patent is standard essential, the '373 Patent is technically and commercially necessary to such products, which establishes license and exhaustion here.

### B. The '373 Patent Is Technically And Commercially Necessary To Make, Use, Or Sell "Complete CDMA Telephones"

### 1. Devices with 3G and 4G capability, like the accused products, are "Complete CDMA Telephones"

Devices with both 3G and 4G capability are "Subscriber Units" for the independent reason that they fall within the definition of "Complete CDMA Telephones." A "Complete CDMA Telephone" is "any complete CDMA (including multi-mode) terminal, including but not limited to a fixed, mobile,

transportable or portable telephone or data terminal, which (i) incorporates all or any part of the QUALCOMM Intellectual Property and (ii) can be used, without any additional equipment or components being attached thereto, to initiate and/or receive Wireless communications." Appx2440. Evolved does not dispute that the language of "incorporates all or any part of the QUALCOMM Intellectual Property" is satisfied here, instead focusing on "CDMA (including multi-mode) terminal" and "Wireless communications." However, contrary to Evolved's contention, neither of these terms purports to exclude devices that implement 4G technology—in fact, they expressly include such devices, as the district court correctly held (Appx31-32).

*First*, a "complete CDMA (including multi-mode) terminal" includes, by definition, multi-mode terminals. The district court explained (Appx15) the meaning of "multi-mode": "Whereas a single-mode modem chip supports only one cellular standard (like CDMA or UMTS), a multimode modem chip supports multiple standards in one chip." As Evolved concedes (Br. 9), "a multi-mode processor supports more than one standard." *See also* Br. 9-10 ("For example, the devices accused of infringement in this case have multi-mode processors because they support both CDMA and LTE standards."). Thus, the language "multi-mode" terminal undisputedly refers to a device capable of initiating both 3G transmissions

*and* other types of transmissions, such as 4G.  There is no dispute that the accused products are all multi-mode devices.

Evolved's only response (Br. 36) is that a multi-mode terminal might not incorporate 4G technology because it could just support 2G and 3G technology. However, even assuming that were correct, it would not negate the point that "multi-mode" *also* includes devices that implement 3G and 4G technology.  Indeed, there is nothing in the word "multi-mode" that indicates an intent to exclude such devices.  Thus, even if this phrase covers 2G+3G devices, it equally covers 3G+4G, 2G+3G+4G, or even 3G+4G+5G devices.

*Second*, Evolved argues that "Wireless" supposedly includes only 3G-compatible devices, but Evolved erroneously disregards the key language in the License Agreement's definition of "Wireless."   Indeed, Evolved's principal argument regarding the meaning of "Wireless" (Br. 38-39) is based on a *prior* definition of the word, rather than the operative definition that all parties agree governs in this litigation.  The actual definition of "Wireless" "includes, *without limitation*, (i) any CDMA-based wireless wide area standard . . . ; and (ii) any updates or revisions to any of the foregoing."  Appx2443 (emphasis added).

Applying the correct definition, "Wireless" does not exclude devices that, in addition to initiating and receiving 3D/CDMA communications, are also compatible with 4G/LTE (or any subsequent technology) networks.  The broad

language "without limitation" plainly indicates that "Wireless" is not limited to 3G/CDMA technology. If there were any doubt, the broad scope of "Wireless" is confirmed by the further inclusion of "any updates or revisions to any of the foregoing." Thus, there is no limitation on "Wireless" that would exclude 4G communications.

Evolved addresses none of these issues, but instead argues (Br. 44) that the updates or revisions are limited to "updates or revisions of CDMA standards, not new network technology." However, Evolved ignores how all of the terms fit together: "Wireless" includes "without limitation, . . . any updates or revisions." Appx2443. Thus, there is no limitation on "Wireless" that excludes 4G communications.

Moreover, even if "Wireless" required specific implementation of 3G/CDMA technology, it certainly does not limit Subscriber Units to *only* 3G technology. The definition of "Complete CDMA Telephone" states, as relevant here, that the device "can be used, without any additional equipment or components being attached thereto, to initiate and/or receive Wireless communications." Appx2440. But a device "can be used . . . to initiate and/or receive" 3G communications even if it *also* can be used to initiate and/or receive 4G communications. There is nothing in the definition of "Complete CDMA Telephone" that suggests it must *only* be used for 3G communications. Indeed, it

would be inconsistent to limit it in this way because the License Agreement expressly includes "multi-mode" devices within the definition of "Complete CDMA Telephone," and "multi-mode" devices necessarily are not limited to only 3G communications. Accordingly, nothing in the term "Wireless" excludes devices that implement both 3G and 4G technology. Such devices, like those Evolved has accused of infringement, are "Complete CDMA Telephones."

### 2. The '373 Patent is technically and commercially necessary to make, use, or sell products with 3G and 4G capability

The district court held (Appx33-35) that, under Evolved's allegations, the '373 Patent is both technically and commercially necessary for 3G/4G devices. As discussed above, Evolved claims that the '373 Patent is necessary only to implement 4G technology, which itself supposedly is not necessary according to the License Agreement. Br. 36-37. But this argument fails on two grounds.

*First*, this argument rests on the unstated and unsupportable theory that the License Agreement covers the '373 Patent only if it is technically or commercially necessary for *each and every* Complete CDMA Telephone.[6] As discussed above, devices that implement both 3G and 4G technology are "Complete CDMA Telephones" and therefore "Subscriber Units," and Evolved claims that the '373

---

[6] The '373 Patent is technically and commercially necessary for *all* "subsequent generation products," *see supra* at 15, and thus even if "all" were the applicable test, it would be satisfied for the "subsequent generation products" basis for license and exhaustion.

Patent is necessary for those devices.  That is all the License Agreement requires.  The License Agreement does not say "necessary for *all* Subscriber Units," just "necessary to use, make and/or sell Subscriber Units."  Evolved makes no argument as to why a patent would have to be necessary for *all* Subscriber Units to fall within the License Agreement.  Instead, Evolved criticizes (Br. 37) the district court for supposedly focusing on the accused products.  But Evolved misses the point:  If the accused products are Subscriber Units and the '373 Patent is necessary for them, then the '373 Patent is covered by the License Agreement.[7]

*Second*, Evolved fails to address the district court's holding that 4G connectivity was (and is) *commercially* necessary for Subscriber Units because consumers demanded (and still demand) 4G connectivity.  In particular, the district court held (Appx33) that having *both* 3G and 4G capability was commercially necessary for all devices being sold during the relevant period.  *See also id.* ("The Court finds SEPs are more analogous to first gear and fifth gear in a transmission since the difference between 3G and 4G is speed.  A car that ran only in first gear would not be commercially viable.").  Evolved does not contest this holding, and thus is bound by it.  Accordingly, Evolved's suggestion that the '373 Patent is not necessary to multi-mode products because theoretically *some* such products could

---

[7]    To the extent Evolved suggests that this would immunize any feature of an accused product, that suggestion is misplaced:  There are many features that are not *necessary*, but 4G connectivity plainly is necessary for a 3G+4G device.

just be 2G+3G devices is irrelevant because, as a commercial necessity, "Subscriber Units" do require 4G compatibility.  In short, 4G capability is commercially necessary for multi-mode devices, which means that the '373 Patent falls within the License Agreement.

## II.    THE DISTRICT COURT ACTED WELL WITHIN ITS DISCRETION BY REJECTING EVOLVED'S UNSANCTIONED AND INCOMPLETE ATTEMPT TO LIMIT THE SCOPE OF THE SUMMARY JUDGMENT RULING

Evolved's argument to limit the scope of the summary judgment ruling is based entirely on the Notice and the Song Declaration, but Evolved failed to properly add this issue or those documents to the summary judgment record.  Thus, the district court correctly declined to consider the Notice and the Song Declaration in deciding summary judgment—and certainly acted within its discretion in doing so.

Delaware's Local Rules state that "[u]nless otherwise ordered, once a motion has been deemed served, the response thereto shall be filed within 14 days, as calculated consistent with Fed. R. Civ. P. 6(a) and CM/ECF Procedures . . . . Except for the citation of subsequent authorities, no additional papers shall be filed *absent court approval*."  D. Del. LR 7.1.2(b) (emphasis added).  The district court's scheduling order confirmed the applicability of this limitation, warning the parties:  "Absent express approval by the court any application to the court for relief shall be by written motion filed with the clerk.  The court will not consider

applications and requests submitted by letter or in a form other than a motion." Case No. 1:15-cv-00544, Dkt. 17 at ¶ 9(a) (referenced at Appx104).

Thus, under the Local Rules and the scheduling order, Evolved was obligated either to file any evidence at the time it responded to the summary judgment motion or to seek leave to file an additional summary judgment motion. Evolved did neither.  Evolved filed the Notice on February 21, 2019, over one year after its cross-motion for summary judgment and nine months after the close of summary judgment briefing.  Nothing in the Local Rules or Federal Rules of Civil Procedure provides for filing a "notice" of supplemental facts.  Indeed, a "notice" is not a recognized filing in Delaware.  Thus, there was no legal basis for Evolved's Notice, and it was not properly part of the summary judgment record.[8]

---

[8]    Likewise, by failing timely to supplement its disclosures when it became aware of the issue, Evolved violated Rule 26(e), which requires that, as to Rule 26(a) disclosures of key witnesses and documents, a party "must supplement or correct its disclosure or response:  (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e).  The penalty for such a violation as set forth in Rule 37 is that "the party is not allowed to use that information or witness to supply evidence on a motion." Fed. R. Civ. P. 37(c)(1).

Moreover, had Evolved Wireless *attempted* to cure its unsanctioned filing by moving for leave to file the Notice, reopen discovery, and/or briefing, the Local Rules required such a non-dispositive motion to "be accompanied by an averment of counsel for the moving party that a reasonable effort has been made to reach agreement with the opposing party on the matters set forth in the motion. . . . [as a] failure to so aver may result in dismissal of the motion."  D. Del. LR 7.1.1. Evolved never attempted to contact Defendants prior to filing the Notice, nor to

Given Evolved's failure to comply with either the Local Rules or the scheduling order, there was no reason (let alone obligation) for the district court to analyze in its order Evolved's Notice or the accompanying Song Declaration. The Third Circuit has held that "local rules play a vital role in the district courts' efforts to manage themselves and their dockets. They facilitate the implementation of court policy, both by setting norms and putting the local bar on notice of their existence, and serve to impose uniformity on practice within a district." *Knoll v. City of Allentown,* 707 F.3d 406, 411 (3d Cir. 2013) (citations and quotation marks omitted). "Given the vital purpose that such rules serve, litigants ignore them at their peril." *Greene*, 557 F. App'x at 200 (citation and quotation marks omitted).

Indeed, under similar circumstances, the Third Circuit held that where an "[a]ffidavit was never properly introduced as part of the summary judgment record, the District Court was under no obligation to recognize or analyze it." *Id.* at 199-200. In that case, Greene filed an untimely affidavit in opposition to summary judgment forty-two days after the completion of briefing. *Id.* at 199. Critically, Greene failed to "procure the District Court's permission to belatedly supplement his opposition, in violation of local civil rules." *Id.* The district court granted summary judgment, seemingly without considering or even mentioning Greene's

---

provide a conforming averment. *See also* D. Del. LR 16.4 (requiring motion to request an extension of a deadline).

untimely affidavit in its memorandum decision. *Id.* The Third Circuit nonetheless affirmed, finding that the court treated the affidavit as an "extraneous filing," and noting the "substantial deference" to a district court's "exercise of discretion [] premised on application of local rules." *Id.* at 200. Moreover, the district court had "no need to formally strike [the belatedly filed affidavit] from th[e] record" because it "was not part of the summary judgment record" in the first place. *See id.* at 200 n.13.

Here, as in *Greene*, neither the Notice nor the Song Declaration was ever properly introduced as part of the summary judgment record. Thus, as in *Greene*, the district court here was under no obligation to recognize or analyze those documents. *Id.* at 199-200. The district court's exercise of discretion in following the Local Rules was proper and entitled to substantial deference. *See Miller*, 624 F.2d at 1200. And in the absence of the Notice and Song Declaration, there was no evidentiary basis to presume that the License Agreement had terminated or to limit the temporal scope of the summary judgment ruling.

The district court's exercise of discretion was especially warranted given the circumstances here. The License Agreement had been renegotiated at least four times since 1993 with retroactive application to prevent any lapse in coverage. Appx2210, Appx2245, Appx2303, Appx2327, Appx2354, Appx2394. Mr. Song acknowledged in his February 2019 declaration that Qualcomm and LGE were in

the process of renegotiating the agreement.  Appx4607-4608.  The hearing was held in September 2019, and Evolved made no representations as to the then-current status of the negotiations or whether an agreement had once again been completed; Evolved simply stated that there was no evidence whether the Agreement had been replaced.  Thus, rather than provide the current facts to Defendants and the court, request a delay to determine the facts, or seek to reopen discovery, Evolved merely asked the court at the hearing to presume that the License Agreement was not in force based on the Notice.  The district court properly declined to do so.[9]

Furthermore, Evolved also failed to make a proper argument based on the supposed evidence.  In the absence of any proper argument, Defendants had no opportunity to present the district court with a proper response.  The Notice was framed as simply providing supplemental facts and included no real argument about why termination defeats the defenses of license and exhaustion, just a single conclusory sentence.  Appx4595-4596.  There was also no existing argument in the briefing to limit the scope of the license or exhaustion defenses based on timing.  That is insufficient to preserve the argument.  *See, e.g.*, *Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1190 (9th Cir. 2000) (holding an argument forfeited when

---

[9] Notably, Evolved did not request reconsideration or modification of the summary judgment decision on the basis of its purported termination argument.

the defendant presented to the trial court only evidence supporting the argument, and not the argument itself).  Because Evolved did not brief the issue, and instead presented only an untimely and unauthorized notice of supplemental facts, Defendants were deprived of an appropriate opportunity to respond to the new argument.

To the extent Evolved faults the district court for not expressly stating the basis for its refusal to consider the Notice (notwithstanding that Evolved could have but chose not to raise this point in a motion for reconsideration after issuance of the Order), there was certainly no obligation for the district court to do so.  This Court "review[s] judgments, not opinions."  *Tesco Corp. v. Nat'l Oilwell Varco, L.P.*, 804 F.3d 1367, 1379 (Fed. Cir. 2015).  As the Third Circuit recognized in *Greene*, a district court need not expressly state that it is not considering something improperly raised; it can simply not consider it.  In any event, the district court made it perfectly clear at the hearing that it was not accepting the inadequate record Evolved presented for any finding that the License Agreement purportedly had been terminated.  *See* Appx4726.  Evolved's choice not to provide timely evidence about the state of the License Agreement—and not to present the issue properly through a motion, as required by the Local Rules—more than justified the district court's rejection of Evolved's untimely argument.

In sum, on the record properly created, there is no evidence to limit the temporal scope of the summary judgment ruling, and the district court correctly rejected Evolved's attempt to do so.

## CONCLUSION

The district court's order granting Defendants' motion for summary judgment should be affirmed.

Respectfully Submitted,

Dated: August 7, 2020

By: /s/ David M. Cooper
David M. Cooper
Thomas D. Pease
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Kevin P.B. Johnson
Victoria F. Maroulis
Todd M. Briggs
QUINN EMANUEL URQUHART & SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000

*Counsel for Defendants-Appellees Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

Dated:  August 7, 2020

By: /s/ Richard A. Cederoth

Richard A. Cederoth
Nathaniel C. Love
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000

*Counsel for Defendants-Appellees Microsoft Corporation, Microsoft Mobile Oy, and Nokia Inc.*

Dated:  August 7, 2020

By: /s/ Stephen S. Korniczky

Stephen S. Korniczky
Martin R. Bader
Ericka J. Schulz
SHEPPARD MULLIN RICHTER & HAMPTON LLP
12275 El Camino Real, Ste 200
San Diego, CA 92130
(858) 720-8900

*Counsel for Defendants-Appellees HTC Corporation and HTC America, Inc.*

Dated:  August 7, 2020

By: /s/ Mitchell G. Stockwell

Mitchell G. Stockwell
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, NE
Suite 2500
Atlanta, GA 30309
T: 404-815-6500
F: 404-815-6555

*Counsel for Defendant-Appellee Motorola Mobility LLC*

Dated:  August 7, 2020

By: /s/ *Charles M. McMahon*

Charles M. McMahon
Brian A. Jones
MCDERMOTT WILL & EMERY LLP
444 W. Lake Street, Suite 4000
Chicago, IL 60606
T: 312-372-2000
F: 312-984-7700

Jay H. Reiziss
MCDERMOTT WILL & EMERY LLP
500 N. Capitol Street, NW
Washington, DC 20001
(202) 756-8000

*Counsel for Defendant-Appellee ZTE (USA) Inc.*

## **<u>PROOF OF SERVICE</u>**

The undersigned hereby certifies that on August 7, 2020, I electronically filed the foregoing CORRECTED BRIEF FOR DEFENDANTS-APPELLEES with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ David M. Cooper
David M. Cooper

# **CERTIFICATE OF COMPLIANCE**

Counsel for Defendants-Appellees hereby certifies that:

1.   The brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because exclusive of the exempted portions it contains 7,732 words as counted by the word processing program used to prepare the brief; and

2.   The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Office Word 2007 in a proportionately spaced typeface: Times New Roman, font size 14.

Dated:  August 7, 2020                         /s/ David M. Cooper
                                                           David M. Cooper